# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 09-09099-JW |
| | Chapter 13 |
| Earl Boston and Darlene Capers Boston, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court on the Objection to Confirmation of Plan and to Valuation of Collateral ("Objection") filed by CitiFinancial Auto Corporation ("CitiFinancial"). In the Objection, CitiFinancial asserts that valuation of the vehicle proposed by Earl Boston and Darlene Capers Boston ("Debtors"), as well as confirmation of Debtors' proposed Chapter 13 plan, should be denied. After considering the pleadings in the matter and the arguments and evidence presented at the hearing, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[1]

## **FINDINGS OF FACT**

1. Within 910 days of the petition, the Debtors financed the purchase of a 2006 Chrysler 300 (the "Vehicle") through DaimlerChrysler Financial Services Americas LLC ("DaimlerChrysler"). To complete the transaction, Debtors and DaimlerChrysler entered into a Retail Installment Contract dated September 8, 2007 (the "Contract"). DaimlerChrysler perfected its purchase money security interest in Debtors' vehicle by

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such; and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

noting its lien on the Vehicle's certificate of title on October 1, 2007. DaimlerChrysler subsequently assigned its rights under the Contract to CitiFinancial.

2. In January of 2008, Debtors sought to modify the Contract to change certain financing terms because they were having difficulty make the high payments. To effectuate these changes, Debtors signed an Amendment Agreement with CitiFinancial on January 18, 2008 ("Amendment"). No additional funds were advanced by CitiFinancial and the Vehicle remained the collateral for the loan. The Amendment changed several material terms of the Contract, including the annual percentage rate of interest, the payment amount, the number of payments, the date for payment, and the maturity date of the loan. The Amendment provides that "[i]t is agreed that all of terms and provisions of original contract shall remain in full force and effect except as expressly modified herein. Borrower acknowledges and affirms that the security interest previously granted remains valid and subsisting."

3. On December 4, 2009, Debtors filed for relief under chapter 13 of the Bankruptcy Code.

4. On December 15, 2009, CitiFinancial filed a proof of claim, asserting a secured claim in the amount of $45,413.93.

5. On December 17, 2009, Debtors filed their chapter 13 plan. The plan seeks to value CitiFinancial's secured claim at $23,475.00 and treat the remainder of its claim as unsecured pursuant to 11 U.S.C. § 506.

6. CitiFinancial filed a timely objection to confirmation of Debtors' chapter 13 plan, contending that the hanging paragraph of 11 U.S.C. § 1325(a)(*) prohibits valuation of its secured claim.

**CONCLUSIONS OF LAW**

The hanging paragraph of 11 U.S.C. § 1325(a), provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

If a creditor's claim meets the requirements of the hanging paragraph, the debtor may not bifurcate or "strip-down" the creditor's secured claim at the current value of the vehicle and treat the balance of the claim as unsecured. The protections offered by the hanging paragraph are limited to creditors who have a "purchase money security interest." Congress's intent in enacting the hanging paragraph was to protect these secured car lenders from having their claims bifurcated in chapter 13 cases. See In re Price, 562 F.3d. 618, 628 (4th Cir. 2009).

The parties do not dispute that the purchase of the Vehicle occurred within 910 days of the filing of the chapter 13 petition, that the Vehicle is a "motor vehicle" within the meaning of the statute, that Debtors acquired the Vehicle for their personal use, or that CitiFinancial (through its predecessor DaimlerChrysler) initially obtained a purchase money security interest when it entered into the Contract with Debtor. The issue is whether CitiFinancial retained its purchase money security interest after it entered into the Amendment. CitiFinancial asserts that the Amendment is a mere modification of the Contract and not a new agreement. Debtor urges the Court to consider the Amendment

as a refinancing of the Contract, which extinguished CitiFinancial's purchase money security interest.

In order to determine whether CitiFinancial holds a purchase money security interest in the Vehicle, the Court must examine state law. [2] Under South Carolina's version of the Uniform Commercial Code, a purchase money security interest is created by a creditor providing financing that enables the debtor to acquire an interest in the goods that become the creditor's collateral. See In re Matthews, 378 B.R. 481, 486-87 (Bankr. D.S.C. 2007) (describing the requirements for a purchase money security interest under S.C. Code § 36-9-103). Official Comment 3 to S.C. Code Ann. 36-9-103 states in part that "the concept of a 'purchase-money security interest' requires a close nexus between the acquisition of collateral and the secured obligation."

In this jurisdiction, case law has established that the refinancing of a debt extinguishes the purchase money character of the original loan, where the original loan was paid off and a new loan extended, because the proceeds of the new loan were not used to acquire rights in the collateral. See Dominion Bank of the Cumberland v. Nuckolls (In re Nuckolls), 780 F.2d 408, 413 (4th Cir. 1985) (holding that, within the context of lien avoidance under 11 U.S.C. § 522(f), the refinancing of an antecedent debt does not result in a purchase-money lien because the debt was not used to acquire the

---

[2] South Carolina law provides:
(a) In this section:
    (1) "purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral; and
    (2) "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.
(b) A security interest in goods is a purchase-money security interest:
    (1) to the extent that the goods are purchase-money collateral with respect to that security interest….
S.C. Code Ann. § 36-9-103 (West 2009).

4

collateral); Rosen v. Assoc. Fin. Serv. (In re Rosen), 17 B.R. 436 (D.S.C. 1982) (holding that the purchase money character of the loan at issue was destroyed by the advancement of additional sums and the refinancing of the original note); In re Connelly, C/A No. 08-01715-JW, slip op. (Bankr. D.S.C. Jun. 25, 2008) (finding that the creditor did not maintain its purchase money security interest where the debtors executed a new note that was intended to pay off the prior loan and control the parties relationship); In re Mosley, C/A No. 96-71639-W, slip op. (Bankr. D.S.C. May 15, 1996) (finding that the refinancing of the original purchase money loan, which was designed to discharge the antecedent debt, transformed the creditor's security interest into a non-purchase money security interest).

This case appears to be distinguishable from those cases. Although several material terms of the Contract were changed, most notably the amount of the monthly payment, the interest rate, and the term of the loan, no additional funds were advanced and no new note or security agreement was executed. Cf. Rosen v. Assoc. Fin. Serv. Co., 18 B.R. 723, 725 (Bankr. D.S.C. 1981), aff'd, 17 B.R. 436 (D.S.C. 1982) (finding that a creditor's purchase money security interest was extinguished where proceeds from a new note were used to satisfy the original note). There was no payoff of the original purchase money loan. In the Amendment, Debtor affirms that the principal balance of the debt is the amount owed under the Contract at the time of the execution of the Amendment, reaffirms the security interest previously granted, and specifically agrees that all terms and provisions of the Contract remain in full force and effect. Without the continuation in effect of the original Contract, it appears that the Amendment would lack sufficient detail to stand alone as a new security agreement. Significantly, the Court notes that the

5

Amendment does not describe or otherwise reference the collateral for the loan. See In re Butler, 160 B.R 155, 158-59 (Bankr. D. Idaho 1990) (finding a novation where the contract expressly rescinds the previous agreement or deals so comprehensively with the subject matter that the previous agreement cannot stand). It appears from the terms of the Amendment that the parties did not intend to create a novation. See Moore v. Weinberg, 644 S.E.2d 740 (S.C. Ct. App. 2007), aff'd, 681 S.E.2d 875 (S.C. 2009) (stating that an addendum that modifies a pre-existing agreement, but does not extinguish it, is not a novation). The Amendment appears to be a mere modification of the original Contract and not a new agreement. For these reasons, the Court concludes that CitiFinancial continues to have a purchase money security interest in the Vehicle.

Since CitiFinancial's claim meets the requirements of the hanging paragraph of § 1325(a)(*), Debtors are prohibited from valuing its claim in their chapter 13 plan. Therefore, CitiFinancial's objection to confirmation is sustained and confirmation is denied. Debtors shall have ten (10) days from the entry of this Order within which to propose and file an amended plan.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**03/05/2010**



*/s/ John E. Waites*

Chief US Bankruptcy Court Judge
District of South Carolina

Entered: 03/05/2010